**Linda May (McIntosh) CLUTTER,
Plaintiff and Appellee,**

v.

**Gordon David McINTOSH, Defendant
and Appellant.**

**Civ. No. 910253.**

Supreme Court of North Dakota.

April 21, 1992.

Wayne T. Anderson (argued), Fargo, for plaintiff and appellee.

Maureen Holman (argued), of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant.

MESCHKE, Justice.

Gordon McIntosh appeals the decision of a referee, affirmed by the district court, that increased his child support obligation. Gordon argues that the changes of circumstance are not material to increasing his child support, and that the amounts of child support are clearly erroneous. We affirm in part, reverse in part, and remand.

Linda and Gordon McIntosh were divorced in 1979 in Arizona. The decree awarded custody of their three children, Abrey, Khara and Trevor to Linda. Gordon was awarded visitation with the children, and was ordered to pay Linda $385 monthly for child support.

Since the divorce, Linda and Gordon have each married another. The divorce decree has been amended four times, in 1980, 1982, 1984 and 1985, all upon Linda's motions. The modifications scheduled visitation, clarified property distribution, and allocated dependent exemptions for income taxes. Each time that Linda moved to increase Gordon's child support obligation, the increase was denied.

Linda and her husband, David Clutter, a pediatrician, now live in Fargo, where David is employed at a local clinic. Linda and David have a child of their own. Linda is not employed outside the home.

Gordon and his wife, Gerlyn, now live in Austin, Texas. They also have a child of their own. Gordon operates a consulting and engineering corporation that he and his wife own. Gerlyn is employed as a computer programmer for IBM.

With the distance between the families, the children have visited Gordon at his home mainly during summer vacations. During the summer of 1990, Trevor, then age fifteen, told Gordon that he wanted to stay and live in Austin. Until then, Trevor had been experiencing academic problems in Fargo. Gordon and Linda agreed that Trevor should remain with his father, and Gordon enrolled Trevor in a private school. Trevor's grades have improved dramatically since the move, and Trevor is doing well. The other two children, Abrey and Khara, remain in Linda's primary custody.

In January 1991, Linda asked the North Dakota district court to amend the divorce decree again. Linda moved to confirm the changed custody of Trevor, to change Christmas visitation, and to make Gordon responsible for all transportation for visitation. Linda also moved to increase Gordon's child support obligation by applying recent administrative guidelines to Gordon's current income.

Gordon resisted, and he counter-moved to make custody of Abrey and Khara, as well as Trevor, joint. Gordon also sought to amend the schedule for visitation and to change the allocation of transportation costs, and moved that Linda be ordered to pay him support for Trevor.

The motions were heard by a referee. Linda and Gordon agreed on custody, transportation costs for visitation, telephone access to the children, and visitation schedules. The referee found that material changes of circumstance warranted changes in child support. Because of the split custody, the referee ordered both Gordon and Linda to pay child support.

Gordon's child support amount was increased from $385 to $1,400 monthly. Linda was ordered to pay $102 monthly. Gordon's obligation was offset by Linda's obligation, leaving a net obligation for Gordon of $1,298 monthly.

After Gordon requested a review of the referee's findings, the trial court confirmed them. Gordon appeals the child support determinations.

## I. MATERIALITY OF CHANGES

■ Gordon argues that the referee erred in finding that the changes of circumstance were material. Courts that have the power to award child support also have the power to modify the amount or method of payment whenever circumstances change materially. *Burrell v. Burrell*, 359 N.W.2d 381, 383 (N.D.1985). A substantial change in the financial circumstances of either parent can be material to support of a child. *Schmidt v. Schmidt*, 432 N.W.2d 860 (N.D.1988). A disparity from the recently published administrative guidelines for setting support has not eliminated the need for a material change of circumstances to authorize a court to adjust support, a majority of this court has ruled. *State ex rel. Younger v. Bryant*, 465 N.W.2d 155 (N.D.1991); *Garbe v. Garbe*, 467 N.W.2d 740 (N.D.1991). Still, a finding of significantly changed income for the obligor alone may be material enough to allow adjustment of child support.

The referee found material changes in Gordon's "significant financial success," in the change in Trevor's custody, and in Linda's leaving employment to stay home with her children. Gordon acknowledges that his income has increased since the divorce from $25,000 annually to $120,000 in 1989.

Even so, he argues that this is not material because the needs of the children and of Linda are adequately met in the Clutter household that has an adjusted gross income of over $163,000 annually. Moreover, Gordon argues, Linda's decreased earnings since the divorce, from $20,000 annually to nothing currently, is entirely voluntary. Gordon adds that his custody of Trevor is not a factor that materially increases Linda's need for child support, but instead decreases it. In all, Gordon argues, the changes are not material enough to increase his support obligation.

Whatever the equitable cast of these arguments, they go to the amounts of support more than they go to the materiality of the changes. The fact that Gordon's income has more than quadrupled is material enough to authorize an increase of child support. *Illies v. Illies*, 462 N.W.2d 878 (N.D.1990) (Material changes for child support where parent's income increased from $1,287 to $1,871, even though primary custodial parent's income increased from $1,029 to $2,675). *See also State ex rel. Younger v. Bryant*, 465 N.W.2d at 159. Alone, Gordon's "significant financial success" justified reconsideration of his child support obligation.

## II. GORDON'S INCOME

■ Some non-custodial parents willingly pay child support in amounts that make their children's lives happy and healthy. When a parent does not pay support promptly and adequately, the judicial system must enter and enforce an order to ensure that the child support fairly meets the needs of the children.

Impelled by federal welfare program dictates, the 1989 Legislature directed the Department of Human Services to create guidelines "to assist courts in determining the amount that a parent should be expected to contribute toward the support of the child...." NDCC 14-09-09.7. The use of formula guidelines is designed to remedy the often inadequate, inconsistent, and ineffective results of random judicial action. The statute adopts a rebuttable presumption that "the amount of child support which would result from the application of child support guidelines is the correct amount of child support." NDCC 14-09-09.7(3). The Department of Human Services issued the new guidelines, effective February 1, 1991. North Dakota Administrative Code Ch. 75-02-04.1. The presumptively correct amount of child support is determined by calculating a scheduled percentage of the obligor's income. NDAC 75-02-04.1-10. "The presumption may be rebutted if a preponderance of the evidence ... establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought." NDCC 14-09-09.7(3). Neither parent questions the applicability of the guidelines to this case.

Gordon argues that the referee incorrectly determined his income to apply the guidelines. He contends that the referee improperly averaged his income and improperly included his spouse's income.

Most of Gordon's earnings since 1984 have been from his own corporation, G.W. McIntosh Engineering and Consulting, Inc. Gordon owns this business jointly with his wife, Gerlyn, who is currently employed outside that corporation. When an obligor is self-employed with income subject to fluctuation, the administrative guidelines instruct that information from several years "must" be used to arrive at income. NDAC 75-02-04.1-02(7).[1] Gordon's fluctu-

---

1. NDAC 75-02-04.1-02 says:
   *Determination of support amount—General instructions.*
   1. Calculations of child support obligations provided for under this chapter consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child's care.
   2. Calculations assume that the care given to the child during temporary periods when the child resides with the obligor or the obligor's relatives do not substitute for the child support obligation.
   3. Net income received by an obligor from all sources must be considered in the determination of available money for child support.
   4. The result of all calculations which determine a monetary amount ending in fifty cents or more must be rounded up to the nearest whole dollar, and must otherwise be rounded down to the nearest whole dollar.

ating income from self-employment was anticipated by the guidelines.

Gordon's income has fluctuated recently from a low in 1985 of $36,600 to a high in 1989 of $120,262. The referee tallied Gordon's income for 1986–1990, totalling $340,838, and divided it by five years, for an average of $68,167 annually. As the guidelines direct, this annual amount was divided by twelve months to calculate Gordon's average monthly income of $5,680. NDAC 75–02–04.1–02(6), at note 1. We conclude that the referee properly computed Gordon's income in keeping with the guidelines.

Gordon argues that, while averaging is permissible in appropriate cases, it distorts his income. Gordon asserts that his consulting business received an extraordinary, one-time, eighteen-month contract with IBM, so that his income jumped from $50,529 in 1988 to $120,262 in 1989. That contract was completed in August 1990, and his income has dropped back to a pre-contract level. Gordon argues that this contract is unlikely to be matched or repeated. While Gordon's income for the first three months of 1991 averaged $3,900 monthly, he argues that his subsequent income is expected to be less, not more.

Gordon's argument simply demonstrates that his income fluctuates. Under NDAC 75–02–04.1–02(7), at note 1, fluctuating income is averaged. The guidelines require that "net income ... from all sources" be considered for child support. NDAC 75–02–04.1–02(3), at note 1. The guidelines do not distinguish between "ordinary" and "extraordinary" income.

Gordon argues that the income of his wife, Gerlyn, was improperly included as his income. As a rule, the income of a spouse is not included in computing the obligor's income for child support. NDAC 75–02–04.1–08.[2] However, where the spouse's income is subject to control "to a significant extent" by the obligor, "for instance, where the obligor is a principal in a business employing the spouse," the guidelines direct inclusion of that spouse's income, too. *Id.*

Because Gordon and Gerlyn jointly own the consulting business, Gordon argues that Gerlyn's income from the business is not "subject to [his] control", and, therefore, should not be included in computations. Doubtless, that will be true in some jointly-owned businesses. Here, however, Gordon testified that Gerlyn worked for McIntosh Inc. when it held contracts requiring her expertise, and that "I did pay her" for her time. Gordon's testimony indicates that, "to a significant extent," he controls Gerlyn's earnings from the corporation.

Gordon argues that, since Gerlyn has been employed directly by IBM for the year or so that she has not recently worked for the consulting business, it was improper to include her average income from the corporation with his. The part of Gerlyn's income from the consulting business was, like Gordon's income, subject to fluctuation. The referee similarly computed her

5. In applying the child support guidelines, an obligor's monthly net income amount ending in fifty dollars or more must be rounded up to the nearest one hundred dollars, and must otherwise be rounded down to the nearest one hundred dollars.

6. The annual total of all income considered in determining a child support obligation must be determined and then divided by twelve in order to determine the obligor's monthly net income.

7. Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly in instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.

2. NDAC 75–02–04.1–08 says:

*Income of spouse.* The income and financial circumstances of the spouse of an obligor should not be considered as income for child support purposes unless the spouse's income and financial circumstances are, to a significant extent, subject to control by the obligor as, for instance, where the obligor is a principal in a business employing the spouse. The value of in-kind income contributed by the spouse to the obligor must be considered, as where the obligor's spouse meets the cost of providing living quarters or transportation used by the obligor, or otherwise allows the obligor to avoid ordinary living expenses.

monthly average by adding her income from McIntosh Inc. during 1986–1990, totalling $77,714; dividing by five years for an annual average of $15,542; and dividing by twelve months for a monthly average of $1,295. Using NDAC 75–02–04.1–01(4) and (5),[3] this addition to Gordon's income makes his monthly income $6,975 gross, or $4,883 net, to derive his child support from the guidelines schedule.

The referee followed the guidelines for computing income of a self-employed obligor, and properly included *only* Gordon's spouse's average income from their jointly-owned corporation, not her income from outside employment. We conclude that the referee's finding of Gordon's current income is not clearly erroneous.

## III.  LINDA'S INCOME

■ The referee found that Trevor's transfer to his father's custody was a material change that required Linda to contribute to Trevor's support. When custody of children is split between parents, (*see* NDAC 75–02–04.1–01(8), at note 3), the amount of child support is computed for each parent, and the lesser amount is subtracted from the greater. NDAC 75–02–04.1–03.[4] Gordon argues that the referee

**3.** NDAC 75–02–04.1–01 says:
*Definitions.*
1. "Custodial parent" means a parent who acts as the primary caregiver on a regular basis for a proportion of time greater than the obligor, regardless of custody descriptions such as "shared" or "joint" custody given in relevant judgments, decrees, or orders.
2. "Gross income" means income from any source, including salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, cash value of in-kind income received on a regular basis, income imputed from assets, and net income from self-employment, but excluding benefits received from means tested public assistance programs such as aid to families with dependent children, supplemental security income, and food stamps.
3. "In-kind income" means the receipt of any valuable right, property or property interest, other than money or money's worth, including, but not limited to, forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property at no charge or less than the customary charge.
4. "Net income" means total gross monthly income less:
   a. Federal income tax obligation based on application of standard deductions and tax tables.
   b. State income tax obligation based on application of standard deductions and tax tables.
   c. Federal Insurance Contributions Act (FICA) deductions or obligations, whichever is less.
   d. That portion of premium payments for health insurance policies or health service contracts intended to afford coverage for the child or children for whom support is being sought, and payments made on actual medical expenses of the child or children for whom support is being sought.
   e. Payments actually made pursuant to a child support order, issued by a court or other governmental agency with authority to issue such orders, with respect to a child for whom support is not being sought in the proceeding before the court.
   f. Union dues where required as a condition of employment.
   g. Employee retirement contributions, other than FICA, where required as a condition of employment.
   h. Employee expenses, incurred on a regular basis, but not reimbursed by the employer, for special equipment or clothing required as a condition of employment.
5. "Net income from self-employment" means gross income of any organization or entity which employs the obligor, but which the obligor is to a significant extent able to control, less actual expenditures attributable to the cost of producing income to that organization or entity.
6. "Obligee" includes, for purposes of this chapter, an obligee as defined in subsection 8 of North Dakota Century Code section 14–09–09.10 and a person who is alleged to be owed a duty of support.
7. "Obligor" includes, for purposes of this chapter, an obligor as defined in subsection 9 of North Dakota Century Code section 14–09–09.10 and a person who is alleged to owe a duty of support.
8. "Split custody" means a situation where the parents have more than one child in common, and where each parent has sole custody of at least one child.

**4.** NDAC 75–02–04.1–03 says:
*Determination of support amount—Split custody.* A support amount must be determined

improperly computed the amount of Linda's child support to offset his obligation. We agree.

The guidelines' definition of income is broad. NDAC 75–02–04.1–01(2), at note 3. Income includes more than earnings from employment; it includes the "cash value of in-kind income received on a regular basis." *Id.* "In-kind income" means

the receipt of any valuable right, property or property interest, other than money or money's worth, including, but not limited to, forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than customary charge, and the use of consumable property at no charge or less than the customary charge.

NDAC 75–02–04.1–01(3). The guidelines direct that "[t]he value of in-kind income contributed by the spouse to the obligor must be considered." NDAC 75–02–04.1–08, at note 2. Linda received in-kind income contributed by her spouse.

Linda is married to a pediatrician who supports the family. Linda testified that she has not worked outside the home since 1983 for several reasons, although she has a bachelor's degree and she is a registered nurse. David's position as a pediatrician keeps her from seeking employment as a nurse in Fargo, Linda says, because his

clinic has anti-nepotism regulations, and other unwritten rules in the city restrict hiring the spouse of a physician. Also, Linda says that she has chosen not to be employed outside the home because her two children, Khara and Trevor, have needed "extra care" for their "Attention Deficit Disorder." [5] Linda testified, however, that this disorder is less of a problem as the children get older because "they have learned coping mechanisms ... [and] they then have control over their lives." Now, Trevor is no longer in her household.

Linda sees herself primarily as a "homemaker and mother and contribut[ing] in the home" in order "to raise [the] child at home." The referee found that "Linda Clutter contributes significantly as a mother and homemaker to the household in which she resides." Though Linda has provided Trevor "a home [in Fargo] to be raised in," the administrative guidelines say that Linda is obligated to pay support for Trevor because Trevor now lives with his father.[6]

The Clutter's income for 1990 was $163,263, all earned by Linda's spouse. Some of this, used by Linda, became "in-kind" income to Linda. The referee computed Linda's income at $593 monthly from some household expenses of the Clutter family that totaled only $2,966 monthly.[7] The ref-

---

for the child or children in each parent's sole custody. The lesser amount is then subtracted from the greater. The difference is the child support amount owed by the parent with the greater obligation.

5. Attention Deficit Disorder [ADD], also known as Attention Deficit Hyperactive Disorder [ADHD], is classified as a Disruptive Behavior Disorder. *Diagnostic and Statistical Manual of Mental Disorders,* (3rd ed.. Rev.1987) at 49. ADD is characterized by "developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity." *Id.* at 50. Onset of ADD usually occurs before age four, but goes unrecognized until the child enters school. *Id.* at 51. ADD impairs social and school functioning; school failure is a major complication. *Id.*

6. NDAC 75–02–04.1–04 says:

*Minimum support level.* A support obligation should be established in each case where the obligor has any income. Even though the obligor's payment is far from sufficient to

meet the child's needs, considerations of policy require that all parents understand the parental duty to support children to the extent of the parent's ability. Equally important considerations of policy require the fostering of relationships between parents and children which may arise out of the recognition of parental duty.

7. The referee used the following figures to arrive at Linda's income of $593.00 per month.

| 1. | Housing, taxes, insurance | 1,316.00 |
| 2. | Utilities | 180.00 |
| 3. | Telephone | 95.00 |
| 4. | Car payment | 325.00 |
| 5. | Car maintenance | 60.00 |
| 6. | Car insurance | 70.00 |
| 7. | Gas | 120.00 |
| 8. | Groceries | 800.00 |
| | Total | $2,966.00 |
| | | × .20 |
| | | $ 593.20 |

eree divided this amount by the number of people in the household, five, to arrive at $593 per month as Linda's income. Applying the schedule at NDAC 75–02–04.1–10 to this $593, the referee derived Linda's child support of $102 monthly.

Thus, out of a monthly family income of $13,605 ($163,263 annually divided by twelve months), the referee found that Linda owed only $102 monthly to support one child. In contrast, out of Gordon's monthly income of $6,975, the referee found that he owed $1,400 monthly to support two children. Emphasizing this great disparity, Gordon argues that Linda's income should be the $10,000 amount actually spent monthly by the entire Clutter household. We reject such an extensive attribution of in-kind income.

On the other hand, contributed living expenses to be counted as in-kind income include more than the cost of housing and transportation that the referee seemed to concentrate on. Anything else that *"allows the obligor to avoid ordinary living expenses"* should be counted. NDAC 75–02–04.1–08, at note 2. (Our emphasis). We conclude that the referee omitted other ordinary living expenses by the Clutter household that benefitted Linda.

The referee read the guidelines too narrowly. The amount used by the referee does not fairly reflect Linda's "ordinary living expenses". Linda's affidavit, about support of the children in her custody listed her family's monthly expenses at nearly $5,200.00, considerably more than the amount listed by the referee. Linda testified "that there are other things that [she] spend[s] money on that are not reflected in [the] affidavit," and that "the [check] registers ... aren't very accurate in that there was lots of times they were out of cash[,] out of pocket things that weren't listed that I have no way of um, accounting for."

Also, the $2,966 amount used by the referee did not reflect what Linda spent on other items, including clothing, furniture, entertainment, church and charities, YMCA memberships, vacations, and life and disability insurance, that were also not shown in her affidavit. We conclude that neither the $2,966 listed by the referee, nor the $5,200 listed in Linda's affidavit, adequately represents the "consumable property" and "ordinary living expenses" that benefitted the Clutter household. On remand, the referee must more appropriately follow the guidelines in computing ordinary living expenses in the Clutter household.

After determining monthly living expenses for Linda's family, the referee divided that figure, $2,966, by the number of people in her household to attribute a one-fifth share to Linda. The reasoning seems to be to apportion to Linda only her fair share of family expenditures. Indeed, Linda argues here that only expenditures "of immediate benefit" to her should be used. Benefit to Linda is a reasonable reference, but we rule that it should include more than her immediate benefit.

Linda's household includes herself and her husband, David, their child, Alexis, and her two children with Gordon, Abrey and Khara. Linda and David share responsibility for the care of Alexis. Linda is primarily responsible for the care of Abrey and Khara. Dividing the monthly household expenditures by five assumes either that David Clutter, alone, supports all three children, or that the children carry their own expenses, or that Gordon's contribution fully supports the care of Abrey and Khara. None of these assumptions is consistent with the guidelines. A more appropriate factor would recognize that some of the consumable property and ordinary living expenses in the household benefit Linda's children and, to some extent, though not necessarily proportionately, are in-kind income to Linda, beyond what is taken care of by Gordon's support payments for Abrey and Khara.[8]

8. The guidelines "consider and assume that one [the custodial] parent acts as a primary caregiver and the other [non-custodial] parent contributes a payment of child support to the child's care." NDAC 75–02–04.1–02(1) at note 1. The guidelines assume consideration of a custodial parent's "substantial monetary and nonmonetary contribution to the child's basic care and needs by virtue of being a custodial parent." NDAC 75–02–04.1–09(1)(b) at note 9 hereafter. In split custody situations, these assumptions are necessarily cancelled out, or balanced pro-

We conclude that the referee's computation of Linda's in-kind income, and the referee's resulting determination of Linda's child support obligation, were clearly erroneous. On remand, the referee must fairly determine Linda's in-kind share of the Clutter household's expenditures.

## IV. CHILDREN'S NEEDS

■ The administrative guidelines for child support consider the "subsistence needs, work expenses, and daily living expenses of the obligor, ... and ... the income of the obligee...." NDAC 75–02–04.1–09.[9] The guidelines do not consider any "increased needs" of the children, nor "educational costs voluntarily incurred at private schools," nor "increased needs of children with handicapping conditions or chronic illness." NDAC 75–02–04.1–09(2), at note 8. Yet, the primary purpose of child support must be the needs of the child.

"The child support guideline schedule amount is rebuttedly presumed to be the correct amount...." NDAC 75–02–04.1–13.[10] This presumption is rebutted if the evidence establishes other factors of "undue hardship to the obligor or a child for whom support is sought." *Montgomery v. Montgomery*, 481 N.W.2d 234 (N.D.1992). The evidence here establishes that Trevor and Khara have "increased needs." Trevor and Khara each have "Attention Deficit Disorder," a "handicapping condition." *See* note 5. Each child is under a physician's care for this condition. Because of Trevor's condition, Gordon contributes increased educational costs, exceeding $6,000 annually, for Trevor to attend a private school.

The referee made specific findings about Khara's disability, medical treatment, and increased needs, but without special education. Detailed evidence about Trevor's disability, treatment, and special educational costs was presented, but there are no specific findings about his "increased needs." Despite substantial evidence of "factors not considered" for Trevor, the referee failed to address and weigh these factors. We conclude that the findings addressing Khara's increased needs, without addressing Trevor's increased needs, are unbalanced and clearly erroneous.

## V. CONCLUSION

We affirm in part, reverse in part, and remand for proceedings consistent with

---

portionately, since they apply to each parent. Therefore, in this case, these assumptions do not apply or are lessened for factoring some of the household benefits to Linda's children in calculating her in-kind income.

9. NDAC 75–02–04.1–09 says:
*Factors considered—Not considered.*
1. The child support amount and the calculations provided for under this chapter consider all factors described or applied in this chapter, except those described in subsection 2 and, in addition, consider:
a. The subsistence needs, work expenses, and daily living expenses of the obligor; and
b. The income of the obligee, which is reflected in a substantial monetary and non-monetary contribution to the child's basic care and needs by virtue of being a custodial parent.
2. The child support guidelines schedule and the calculations provided for under this chapter do not consider:
a. The increased need in cases where support for more than six children is sought in the matter before the court;
b. The increased ability of an obligor, with a monthly net income which exceeds ten thousand dollars, to provide child support;

c. The increased educational costs voluntarily incurred at private schools;
d. The increased needs of children with handicapping conditions or chronic illness;
e. The increased needs of children age twelve and older;
f. The full cost of child care purchased by the obligee;
g. The value of the income tax exemption for supported children; and
h. The reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order.

10. NDAC 75–02–04.1–13 says:
*Application.* The child support guideline schedule amount is rebuttedly presumed to be the correct amount of child support in all child support determinations, including both temporary and permanent determinations, and including determinations necessitated by actions for the support of children of married persons, actions seeking domestic violence protection orders, actions arriving out of divorce, actions arising out of paternity determinations, actions based upon a claim for necessaries, actions arising out of juvenile court proceedings, and actions seeking the reciprocal enforcement of support.

this opinion. On remand, the trial court must fairly compute Linda's in-kind income for her offsetting support obligation, and must fairly weigh the special needs of a handicapped child in each household.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

The Honorable VERNON R. PEDERSON, Surrogate Justice, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON not being a member of this Court at the time this case was heard did not participate in this decision.

LEVINE, Justice, specially concurring.

The child support guidelines herald a new era in many respects and, as this case illustrates, they elevate into prominence the concept of in-kind income. It may well be that trial judges have always taken into account, sub rosa, a stepparent's income, when determining how much child support the stepparent's noncustodial spouse must pay. The relevance of in-kind income is not new. This court relied on in-kind income to affirm a trial court judgment that did not assess child support against a noncustodial parent whose children lived with their father in the former family home. *Hugret v. Hugret,* 386 N.W.2d 26, 29 n. 5 (N.D.1986). ["Bonita is in effect providing 'child support' to the extent that Peter and the children are allowed to live in the family home rent free until the youngest child reaches the age of majority in 1990. Bonita thus is deprived of her one-half share of the equity in the home until that time."] But, with the advent of the guidelines, what may have been formerly an unarticulated premise, is now a required up front computation.

That being the case, the courts' task in implementing the principle is going to be a challenging enterprise. In this case, we embark upon that challenge with rather vague directions to the fact finder but, nonetheless, a firm command that the calculation of in-kind income be fairly based on the noncustodial parent's realistic ordinary living expenses.

Where I question the majority is in its suggested allocation of in-kind income to Linda for the value of the benefits the two children derive from their stepfather's support that exceeds Gordon's contributions. However, doing that denigrates the value of Linda's contribution. I believe the value of the care, nurture and guidance provided by Linda to the two children should be a complete offset to the attribution of any in-kind income to her arising from the value of the benefit to these children from their stepfather's support. NDAC § 75–02–04.1–09(1)(b) recognizes a custodial parent's "substantial monetary and nonmonetary contribution to the child's basic care and needs by virtue of being a custodial parent." I disagree, therefore, that the fact finder should consider any benefit to the children as in-kind income to Linda. Instead, the fact finder should fairly compute Linda's ordinary living expenses and consumable property based only upon her share.

In this case, Linda's child support obligation will probably be offset against Gordon's larger obligation. I anticipate with little joy the next case in which the remarried noncustodial parent, unemployed outside the home, with newly born child of second marriage, is deemed to have in-kind income of $1,000 and ordered to pay child support for two children of prior marriage in the amount of $300/month. But the noncustodial parent doesn't have $300/month. Must the spouse-stepparent pay? No, says section 14–09–09, NDCC. Yes, say the guidelines. Stay tuned!

I concur in most of the opinion but disagree that there be any attribution of in-kind income to Linda which supposedly arises from an alleged benefit to the parties' two children. I also suggest that the Department of Human Services revisit the subject matter of in-kind income and consider whether or not that concept was intended to convert the noncustodial, but remarried, parent who is in the home caring for a young child of the remarriage, into a "voluntary" or "temporarily" unemployed child support obligor whose child support obligation accrues while that parent (in all likelihood, if custom prevails, the mother) remains in the home to care for the child. *See Cook v. Cook,* 364 N.W.2d 74 (N.D. 1985); *Burrell v. Burrell,* 359 N.W.2d 381

(N.D.1985); *Hoster v. Hoster,* 216 N.W.2d 698 (N.D.1974).

VERNON R. PEDERSON, Surrogate Judge, concurring specially.

This case illustrates the confusion that has resulted from the efforts of the Legislative Assembly and the Department of Human Services, being encouraged by well-meaning experts, to find simple solutions to complex domestic problems through "clear and easy guidelines."

Because the family is not created using contractual rights and contractual obligations, when the family is being dismantled contract rules and mathematical formulas do not help a lot.

Through experience, even when reaching most unhappy results, the courts developed goals, sometimes bearing labels: "best interest of the child," "least damaging alternative," "ability to pay," "parental concern," and "societal obligation." They were not "clear and easy" in their application, neither did they become straitjacket rules.

"Neither parent [in this case] questions the applicability of the guidelines...." For that reason I can concur with the opinion authored by Justice Meschke.