Beverlee SPILOVOY, a/k/a Beverly Spilo-voy, (n/k/a Beverly Spilovoy Williams), Plaintiff and Appellee,

v.

Richard SPILOVOY, Defendant and Appellant.

Civ. No. 930108.

Supreme Court of North Dakota.

Jan. 5, 1994.

Nodland & Dickson, Bismarck, for plaintiff and appellee; argued by Irvin B. Nodland.

Strehlow, Bryan and Paasch, Casselton, for defendant and appellant; argued by Naomi H. Paasch.

LEVINE, Justice.

Richard Spilovoy appeals from a district court judgment requiring him to pay child support of $600.00 per month for Michelle, who is in the custody of Richard's former wife, Beverlee Spilovoy, and requiring Beverlee to pay child support of $10.00 per month for Stacey, who is in Richard's custody. We reverse and remand for entry of an amended judgment.

Richard and Beverlee married in 1971 and divorced in 1990. They had two children, Stacey, born in 1978, and Michelle, born in 1980. Richard received physical custody of Stacey and Beverlee received physical custody of Michelle. Richard and Beverlee agreed that Richard would pay Beverlee $900 per month child support for Michelle and that Beverlee would not pay child support to Richard for Stacey.

After suffering a substantial reduction in income, Richard moved to reduce his child support for Michelle and to require Beverlee to pay child support for Stacey. Beverlee has remarried and she and her new husband have had one child. Beverlee is not employed outside the home. The trial court reduced Richard's child support obligation to $600 per month for Michelle and ordered Beverlee to pay $10.00 per month for Stacey's support. On a prior appeal, we concluded that the trial court's findings of fact were inadequate, and that the trial court's

determination of Beverlee's child support obligation was clearly erroneous. We remanded "for more detailed findings and a recomputation of Beverlee's child support obligation to be offset against Richard's obligation in accordance with the guidelines." *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D.1992).

After a hearing on remand and Beverlee's motion to modify Richard's child support obligation, the trial court made the following findings of fact:

"7. That Richard Williams, Jr., the husband of [Beverlee], provides to [Beverlee], the infant child, and Michelle Leann Spilovoy, the following ordinary living expenses:

| | |
|---|---:|
| Home payment | $ 457.00 |
| Gas and electricity | 50.00 |
| Telephone (adjusted) | 50.00 |
| Food | 594.00 |
| Clothing | 111.00 |
| Laundry and dry cleaning | 45.00 |
| Medical and dental | 153.00 |
| Fire insurance | 23.00 |
| Transportation (adjusted) | 150.00 |
| Education | 90.00 |
| Mobile home taxes and repairs | 62.00 |
| Auto and boat insurance | 50.00 |
| Vehicle licenses | 13.00 |
| TOTAL | $1,848.00 |

"8. That Richard Williams, Jr., husband of [Beverlee], provides to [Beverlee], their infant child, and Michelle Leann Spilovoy, *extraordinary* expenses for such items as attorney fees, disability insurance, his personal business expenses, clubs and organizations, allowances, school activities, church activities, camp, piano lessons, veterinary and boarding expenses for horses, and birthday expenses and vacations.

\*　　\*　　\*　　\*　　\*　　\*

"10. That [Beverlee's] contributions to the marital enterprise through her child care, home care and other care constitutes a contribution to monthly living expenditures when computed at minimum wage, 40–hour week, of $737.00.

"11. That [Beverlee] receives a one-half proportional monthly in-kind-income for ordinary living expenses in the amount of $924.00.

"12. That [Beverlee] contributes $737.00 per month by way of her labors as

her contribution toward the family household expenses and receives a net in-kind-income for ordinary living expenses in the sum of $187.00."

The trial court concluded that Beverlee should pay $10.00 per month in child support for Stacey and that Richard should pay $600.00 per month in child support for Michelle. Judgment was entered accordingly and Richard appealed.

This case focuses on the thorny question of how we define a child support obligor's "in-kind income" contributed by a new spouse in accordance with Ch. 75–02–04.1, N.D.A.C., the child support guidelines developed by the North Dakota Department of Human Services. Because Richard and Beverlee each has physical custody of one of their children, each is responsible for child support. Section 75–02–04.1–03, N.D.A.C., says:

"A support amount must be determined for the child or children in each parent's sole custody. The lesser amount is then subtracted from the greater. The difference is the child support amount owed by the parent with the greater obligation."

In determining the amount of an obligor's child support obligation, § 75–02–04.1–02(3), N.D.A.C., explains that "[n]et income received by an obligor from all sources must be considered in the determination of available money for child support." Gross income is broadly defined by § 75–02–04.1–01(2), N.D.A.C.:

" 'Gross income' means income from any source, including salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, *cash value of in-kind income received on a regular basis,* income imputed from assets, and net income from self-employment, but excluding benefits received from means tested public assistance programs such as

aid to families with dependent children, supplemental security income, and food stamps." (Emphasis added.)

In-kind income is defined as:

"the receipt of any valuable right, property or property interest, other than money or money's worth, including, but not limited to, forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property at no charge or less than the customary charge."

Section 75–02–04.1–01(3), N.D.A.C.

Section 75–02–04.1–08, N.D.A.C., cautions that the income of an obligor's spouse is not to be considered,[1] but then orders that in-kind income contributed by an obligor's spouse must be considered:

"The income and financial circumstances of the spouse of an obligor should not be considered as income for child support purposes unless the spouse's income and financial circumstances are, to a significant extent, subject to control by the obligor as, for instance, where the obligor is a principal in a business employing the spouse. The value of in-kind income contributed by the spouse to the obligor must be considered, as where the obligor's spouse meets the cost of providing living quarters or transportation used by the obligor, or otherwise allows the obligor to avoid ordinary living expenses."

Finally, net income, upon which an obligor's child support obligation is based, is defined by § 75–02–04.1–01(4), N.D.A.C., as the difference between gross income and payments for taxes, certain health insurance, child support, union dues, certain pensions and certain employee expenses.

With those guidelines in mind, we now address the issues raised in this appeal.

■ The first issue is the easiest to resolve. Richard contends that the trial court arbitrarily and unreasonably refused to allow his counsel to adequately and fully cross-examine Beverlee to establish the value of in-kind income contributed to her by her spouse. Our review of the transcript reveals that the trial court reluctantly allowed Richard's counsel to conduct a protracted and detailed cross-examination of Beverlee. The court also questioned Beverlee extensively and then asked, "Have I forgotten anything that could be considered as in-kind income?" Richard's counsel replied, "Not that I can think of, Your Honor." The court also afforded Richard's counsel the opportunity to depose Beverlee to "further discover this information." The record clearly refutes Richard's complaint that his attorney was unreasonably constrained by the trial court.

■ Richard next contends that the trial court erred in subtracting the value of Beverlee's contribution to the marital enterprise from the in-kind income contributed to her by her spouse. We agree.

The trial court valued Beverlee's "contributions to the marital enterprise through her child care, home care and other care" at $737.00 and deducted that amount from the value of the in-kind income contributed by Beverlee's spouse. The author of this opinion suggested that the value of a child support obligor's "child-care, home-care and all other care" might be viewed as a setoff or payment "thereby removing it from the 'no-charge' definition of in-kind income" [*Spilovoy v. Spilovoy, supra*, 488 N.W.2d at 878–79 (Levine, J., concurring specially) ], as an attempt to prevent the imposition of a financial

---

1. The provision is in recognition of § 14–09–09, N.D.C.C., which provides:

"*14–09–09. Liability of stepparent for support.* A stepparent is not bound to maintain the spouse's dependent children, as defined in section 50–09–01, unless the child is received into the stepparent's family. If the stepparent receives them into the family, the stepparent is liable, to the extent of his or her ability, to support them during the marriage and so long thereafter as they remain in the stepparent's family. Such liability may be enforced against

the stepparent by any person furnishing necessaries to such children. If the children are received into the stepparent's family and supported by the stepparent, it is presumed that the stepparent does so as a parent, in which case the children are not liable to the stepparent for their support, nor the stepparent to them for their services. The legal obligation of a natural or adoptive parent to support his or her children is not affected by the liability imposed upon their stepparent by this section."

obligation on stepparents that is prohibited by § 14–09–09, N.D.C.C. That suggestion, however, did not garner the support of a majority of this court nor the attention of the Department of Human Services, [see *Guskjolen v. Guskjolen*, 499 N.W.2d 126, 129 (N.D. 1993) (Levine, J., specially, concurring)] and is therefore, not the law. Accordingly, the trial court's finding must be reversed because neither the guidelines nor case law support it.

Richard contends that the trial court's finding that Beverlee received from her spouse "in-kind-income for ordinary living expenses in the amount of $924.00" is clearly erroneous because it does not include the value of a number of items that the trial court deemed to be "extraordinary expenses," payments on indebtedness, or the use of some consumable property. We agree that the finding is clearly erroneous, but for a different reason.

Richard relies on our decision in *Clutter v. McIntosh*, 484 N.W.2d 846 (N.D.1992), for an expansive interpretation of "in-kind income" of an obligor-parent who has remarried and does not work outside the home. In *Clutter*, the referee calculated an obligor-mother's in-kind income by considering what she and her new spouse spent on housing, taxes, insurance, utilities, telephone, car payment, car maintenance, car insurance, gas, and groceries. On appeal, we said:

> "[C]ontributed living expenses to be counted as in-kind income include more than the cost of housing and transportation that the referee seemed to concentrate on. Anything else that '*allows the obligor to avoid*

*ordinary living expenses*' should be counted. NDAC 75–02–04.1–08, at note 2. (Our emphasis)."

484 N.W.2d at 852. We suggested that the "consumable property" and "ordinary living expenses" included in-kind income consists of all that the referee considered, as well as such other items like "clothing, furniture, entertainment, church and charities, YMCA memberships, vacations, and life and disability insurance." *Id.* Experience and further reflection make us conclude that *Clutter* carried the concept of in-kind income contributed by a child support obligor's spouse too far.

Study of our child support guidelines and those of other states compiled in National Center for State Courts, *Child Support Guidelines: A Compendium* (May 1, 1991), reveals a number of interesting features: (1) In twelve states, only the obligor's income is considered; in thirty-eight states, both parents' incomes are considered. (2) In thirty states, the court may impute or calculate the potential income of a parent who is voluntarily unemployed or underemployed. (3) In fourteen states, in-kind income is considered, but only if it is received in employment, self-employment, or the operation of a business. (4) In eight states, a court may specifically consider the income or expense contribution of a new spouse or other person; the guidelines of three states specifically exclude consideration of the monetary benefits, resources, or income of a new spouse.

■ The North Dakota child support guidelines do not provide for imputing wages to a noncustodial parent who remarries and chooses not to work outside the home.[2] *Gu-*

---

**2.** In the case of a voluntarily unemployed or underemployed child support obligor, imputing income based on ability to earn or pay, rather than the cash value of in-kind income contributed by a spouse, may be more consistent with prior case law addressing parents who become voluntarily unemployed or underemployed to avoid a child support obligation. *See, e.g., Hanson v. Hanson*, 404 N.W.2d 460 (N.D.1987); *Perry v. Perry*, 382 N.W.2d 628 (N.D.1986). Carried too far, consideration of a child support obligor's in-kind income contributed by a remarried obligor's spouse may run afoul of § 14–09–09, N.D.C.C., because the obligor's new spouse has no choice in the matter, but must support his or her family, including the obligor. That support, to the extent that it allows the obligor to avoid

ordinary living expenses, then becomes in-kind income to be considered in setting the amount of the obligor's child support obligation. On the other hand, imputing income to a voluntarily unemployed or underemployed remarried obligor, based on the obligor's ability to earn, involves the exercise of choices. "[M]arriage is a partnership enterprise, a joint venture, to which each party contributes his and her efforts and skills, *as agreed upon*, either or both within or without the home." *Erickson v. Erickson*, 384 N.W.2d 659, 663 (N.D.1986) (Levine, J., concurring.) (Emphasis added.) The remarried obligor, in concert with his or her spouse, can choose whether or not to work outside the home to earn a cash income to be considered in determining his or her obligation, knowing the conse-

*skjolen v. Guskjolen, supra; Spilovoy v. Spilovoy, supra.* Our guidelines also do not take into account the income of a new spouse in the household, which is, of course, consistent with § 14–09–09, N.D.C.C. However, our guidelines do require courts to consider the in-kind income contributed to an obligor by his or her spouse.

█ Upon further reflection, and after seeing problems caused in the trial court upon remand in attempting to apply *Clutter's* construction of in-kind income, we now limit somewhat our prior construction of in-kind income. The guidelines require that we value the obligor's avoidance of "ordinary living expenses." The less expansively we construe "ordinary living expenses," the less likely a violation of § 14–09–09, N.D.C.C., will occur. To harmonize the child support guidelines with § 14–09–09, N.D.C.C., and to conserve scarce judicial resources,[3] we construe in-kind income contributed by an obligor's spouse to include only basic living expenses, the value of which to the obligor is relatively easy to measure and which are unlikely to lead to a de facto requirement of stepparent support of children not residing in the obligor's household. Ordinarily, in-kind income contributed by a spouse should be limited to food, shelter, utilities, clothing, health care, and transportation.

So limiting in-kind income not only decreases the potential for conflict with § 14–09–09, N.D.C.C., it also decreases the burdens on trial courts, the trial expenses of the parties, and the emotional tumult created by fruitless litigation to value every possible contribution made by an obligor's spouse. "Indefinite continuation of a dispute is a social burden. It consumes time and energy that may be put to other use, not only of the parties but of the community as a whole." *Restatement (Second) of Judgments,* Introduction at 11 (1992). Reducing the trial time and expense devoted to valuing in-kind income contributed by an obligor's spouse will allow community and party time, energy, and resources to be put to other use. Valuing only the basic items we have listed obviates the potential of wide variations in child support obligations because of differences among factfinders who are required to measure intangibles that may be difficult to value. Measuring only the listed items forestalls the very problems of unpredictable and uneven results that the guidelines were designed to eliminate.

Using the trial court's findings on the values of ordinary living expenses contributed by Beverlee's spouse and adding $100.00 for heat and $152.00 for lot rent for their mobile home that Beverlee testified that she and her spouse spent, Beverlee's in-kind income contributed by her spouse is as follows:

| | |
|---|---|
| Food | $ 594.00 |
| Shelter (payment, insurance, taxes, and repairs) | 542.00 |
| Utilities (heat, phone, gas, and electricity) | 352.00 |
| Clothing, laundry, and dry cleaning | 156.00 |
| Health care | 153.00 |
| Transportation | 213.00 |
| Total | $2,010.00 |

Using the trial court's method of determination, allocating one-half to Beverlee, which has not been challenged as incorrect, Beverlee's proportionate share of that amount, her in-kind income contributed by her spouse, is $1,005.00. Rounded down to the nearest one hundred dollars, pursuant to § 75–02–04.1–

---

quences of either choice. The spouse of the nonworking remarried obligor may choose whether or not to pay the obligor's child support obligation based on the obligor's imputed cash income. That element of choice renders imputing cash income of a nonworking remarried obligor less likely to run afoul of § 14–09–09, N.D.C.C., than attributing in-kind income to an obligor based upon the new spouse's contributions, which the new spouse has no choice but to provide.

**3.** With fewer trial court judges and increasing caseloads, conservation of judicial resources is becoming an increasingly important consideration. *See, e.g., K & K Implement, Inc. v. First Nat'l Bank,* 501 N.W.2d 734, 738 (N.D.1993), where we said the "[a]pplication of the law of res judicata conserves scarce judicial resources and avoids wasteful expense and delay," observed in footnote 1 that "[j]udicial resources are scarce and becoming more scarce," citing § 27–05–00.1, N.D.C.C., abolishing county courts and creating district court judgeships, and § 27–05–01(2), N.D.C.C., requiring this court to reduce the number of district judges.

02(5), N.D.A.C., Beverlee's monthly net income is $1,000.00. The presumptively-correct child support obligation for an obligor with a net monthly income of $1,000.00 is $250.00 per month for one child.

Richard contends that the trial court's finding that Beverlee has a child support obligation of $10.00 per month for Stacey without addressing the increased cost of Stacey's attendance of a private school and additional unreimbursed medical expenses resulting from her Systemic Lupus Erythrematosis, is clearly erroneous.

Section 75–02–04.1–09(2), N.D.A.C., states:

"The child support guidelines schedule and the calculations provided for under this chapter do not consider:

\*     \*     \*     \*     \*     \*

"c.   The increased educational costs voluntarily incurred at private schools;

"d.   The increased needs of children with handicapping conditions or chronic illness...."

We are not persuaded, however, that the trial court failed to address Stacey's increased needs. The court may not have thought the increased needs great enough to justify deviation from the guideline amount in light of the relative incomes of the parties. The court may have thought Beverlee could pay no more, in light of the finding that she had a "net" in-kind income of only $187.00. Although we have recalculated Beverlee's net income to be $1,000.00 per month, we are not persuaded that a deviation from the guideline amount is required on the basis of the present record, especially in light of our recalculation of Beverlee's child support obligation from $10.00 per month to $250.00 per month.

The judgment is reversed and the matter is remanded for entry of an amended judgment in accordance with this opinion.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.