1997 ND 232

**Todd D. OTTERSON, Plaintiff and Appellant,**

v.

**Corinna A. OTTERSON, n/k/a Schultz, Defendant and Appellee.**

**Civil No. 970096.**

Supreme Court of North Dakota.

Dec. 2, 1997.

Steven J. Simonson (argued), Assistant State's Attorney, and Tina M. Heinrich (appearance), of Regional Child Support Enforcement Unit, Minot, for plaintiff and appellant.

Michael S. McIntee, of McIntee Law Firm, Towner, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The Minot Regional Child Support Enforcement Unit [the Unit] appealed from a judgment dismissing its motion to modify child support owed by Corrina Schultz. Because the trial court improperly shifted the burden of proof and did not include proceeds

of a personal injury settlement in Schultz's income, we reverse and remand for further proceedings.

## I.

[¶ 2] Schultz and Todd Otterson divorced in 1990. Otterson was awarded custody of the parties' minor child. Schultz, who was attending college and not working, was ordered to pay $50 per month child support.

[¶ 3] In 1993 Schultz began working as a laborer for Burlington Northern Railroad. Her employment with the railroad ended when she suffered a work-related back injury in November 1993. Schultz settled her claim against Burlington Northern for $75,000, receiving a net of $51,308.77 after expenses and attorney's fees. She used the money to buy a car, pay off her home mortgage and other bills, and pay child support arrearages.

[¶ 4] Schultz's back injury was last evaluated in 1994. At that time it was concluded she could not return to work as a laborer, but was capable of performing light to moderate duty work. She has not been reevaluated nor treated for her back injury since that time.

[¶ 5] Schultz was briefly employed in 1995 as a "house sitter" by Rehab Services in Minot. She testified she had to leave that job because sitting at a desk for prolonged periods, combined with the 100 mile round trip commute to Minot from her home in Towner, caused pain in her back and was "too much" for her. She also testified it was not financially feasible to drive daily to Minot for the job. Schultz is currently unemployed, and testified she has not looked for work of any type in the Towner or Rugby areas because there are no appropriate jobs for her there.

[¶ 6] Schultz has remarried and at the time of the hearing had an eight-month old child. She performs normal household chores, including cooking and cleaning, and takes care of her infant child. Schultz testified she has no current income and relies upon her husband to provide for her.

[¶ 7] The Unit conducted a review of the prior child support order and, concluding Schultz's $50 per month obligation was less than eighty-five percent of the amount required by the guidelines, brought a motion seeking modification under N.D.C.C. § 14–09–08.4(3). After a hearing, the trial court concluded the Unit had failed to meet its burden of showing that Schultz's "disability was not of a nature or extent so as to allow for an imputation of income." The court found Schultz was "de facto disabled," and it would be "economically unrealistic" for Schultz to move her new family to another city where suitable employment might be available. The court thus refused to impute income to Schultz under N.D.A.C. § 75–02–04.1–07. The court also refused to consider Schultz's $51,000 personal injury settlement as income for child support purposes.

## II.

[¶ 8] Under N.D.C.C. § 14–09–08.4(3), the Unit is authorized to seek modification of a prior child support order if the amount ordered is inconsistent with the guidelines. If the prior order was entered at least one year before the motion to modify, the trial court must apply the guidelines and order support in the presumptively correct amount, unless the presumption is rebutted. N.D.C.C. § 14–09–08.4(4). *Nelson v. Nelson*, 547 N.W.2d 741, 744 (N.D.1996).

[¶ 9] The Unit asserts the trial court erroneously applied the guidelines in this case by placing the burden of proof upon the Unit to prove Schultz's disability did not preclude her from earning income.

[¶ 10] Schultz was not employed or otherwise earning income at the time of the hearing. An obligor's ability to pay child support is not determined solely upon actual income, but also takes into account the obligor's earning capacity. *Nelson*, 547 N.W.2d at 744–745. The guidelines recognize that parents have a duty to support their children to the best of their abilities, not simply to their inclinations. *Id.* at 746. Consequently, N.D.A.C. § 75–02–04.1–07(3) requires the imputation of income when an obligor is unemployed:

"3. Except as provided in subsections 4 and 5, monthly gross income based on earning capacity equal to the greatest of

subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

"a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

"b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

"c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided."

The Unit seeks imputation of income at the minimum wage level, conceding there is no evidence to impute income at a higher level under N.D.A.C. § 75–02–04.1–07(3)(b) or (c).

[¶ 11] If an unemployed obligor asserts she is unable to earn income because of disability, subsection (4)(b) of N.D.A.C. § 75–02–04.1–07 governs:

"4. Monthly gross income based on earning capacity may be imputed in an amount less than would be imputed under subsection 3 if the obligor shows:

\*    \*    \*    \*    \*    \*

"b. The obligor suffers from a disability sufficient in severity to reasonably preclude the obligor from gainful employment that produces average monthly gross earnings equal to one hundred sixty-seven times the hourly federal minimum wage."

The import of these two subsections is clear: income *must* be imputed as determined under subsection (3) unless *the obligor* proves she suffers from a disability which precludes her from earning at least minimum wage. Under subsection (4)(b), if the obligor proves she is incapable of earning the equivalent of full-time minimum wage, the court may then impute income in some lesser amount.

[¶ 12] The trial court in this case clearly misapplied the guidelines by placing the burden of proof upon the Unit to prove Schultz was not disabled and was capable of earning income. The guidelines place the burden upon Schultz to prove she is disabled and not capable of earning minimum wage. *Bernhardt v. Bernhardt*, 1997 ND 80, ¶ 9, 561 N.W.2d 656. If she carries that burden, the trial court would then have discretion to impute income in a lesser amount under N.D.A.C. § 75–02–04.1–07(4). *Bernhardt*, 1997 ND 80, ¶ 9, 561 N.W.2d 656.

[¶ 13] We are also concerned that the trial court injected an improper factor—the economic feasibility of Schultz's employment prospects—into its determination of disability. To the extent the court expressed concern about the availability of work in the Towner–Rugby area, and the economic feasibility of Schultz relocating to find work, those concerns are addressed by N.D.A.C. § 75–02–04.1–07(6):

"If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable in the community, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings."

Thus, availability of employment opportunities may be relevant when seeking to impute income in an amount greater than minimum wage under subsection (3)(b) or (c), but the guidelines presume that minimum wage jobs are available in any community. For these purposes, "community" is defined as "any place within one hundred miles" of the obligor's residence. N.D.A.C. § 75–02–04.1–07(1)(a); *see Kjos v. Brandenburger*, 552 N.W.2d 63, 65 (N.D.1996).

[¶ 14] We conclude the trial court erroneously placed the burden of proof upon the Unit to disprove Schultz's disability. Upon remand, the court must impute income to Schultz under N.D.A.C. § 75–02–04.1–07(3)(a) unless Schultz proves she is disabled to such an extent that she is unable to earn minimum wage. If she satisfies that burden,

the court may impute income in a lesser amount under N.D.A.C. § 75–02–04.1–07(4).

### III.

[¶ 15] The Unit asserts the trial court erred in failing to consider Schultz's $51,-308.77 net personal injury settlement in determining her income for child support purposes. We agree.

[¶ 16] N.D.C.C. § 14–09–09.10(8) defines "income" for child support purposes:

· "'Income' means any form of payment, regardless of source, owed to an obligor, including any earned, unearned, taxable or nontaxable income, workers' compensation, disability benefits, unemployment compensation benefits, annuity and retirement benefits, but excluding public assistance benefits administered under state law."

N.D.A.C. § 75–02–04.1–01(5) further defines "gross income" with additional examples of the various types of payments included within an obligor's income. Support is to be calculated upon "net income," which is "gross income" less the exclusions allowed under N.D.A.C. § 75–02–04.1–01(7). *See Longtine v. Yeado*, 1997 ND 166, ¶ 7, 567 N.W.2d 819. Proceeds from a personal injury settlement are not included in the list of exclusions.

[¶ 17] The guideline definition of income is very broad, intended to include any form of payment to an obligor, regardless of source, not specifically excluded in N.D.A.C. § 75–02–04.1–01(7). *See Longtine*, 1997 ND 166, ¶¶ 7–9, 567 N.W.2d 819; *Helbling v. Helbling*, 541 N.W.2d 443, 446–447 (N.D. 1995). We have thus held that non-recurring lump sum payments are includable in an obligor's income for determining child support. *Longtine*, 1997 ND 166, ¶¶ 9, 12–13, 567 N.W.2d 819 (profits from auction of farm machinery and capital gain realized from insurance proceeds for a house fire); *Helbling*, 541 N.W.2d at 447 (excess relocation expenses paid by obligor's employer). The guidelines do not authorize a deduction for nonrecurrent payments, and our law and public policy dictate that children should share in the obligor's receipt of such payments. *Longtine*, 1997 ND 166, ¶ 8, 567 N.W.2d 819; *Helbling*, 541 N.W.2d at 447.

[¶ 18] For purposes of calculating child support, there is nothing which inherently distinguishes personal injury settlement payments from the auction profits and capital gains in *Longtine* or the excess relocation expenses in *Helbling*. The child support guidelines envision a broad definition of "income" with exclusions only for certain enumerated items. We will not create judicial exceptions to those definitions.

[¶ 19] Relying upon Burlington Northern's failure to issue tax documents "indicating the amount as wages," the trial court stressed the nontaxable nature of the payments to support its refusal to consider the settlement as income to Schultz. The guideline drafters specifically declined to define income by reference to federal tax definitions, and our statutory definition of "income" for child support purposes includes nontaxable amounts. *See Longtine*, 1997 ND 166, ¶ 10, 567 N.W.2d 819; N.D.C.C. § 14–09–09.10(8).

[¶ 20] We conclude the trial court erred in refusing to consider Schultz's personal injury settlement when calculating her income for child support purposes.

### IV.

[¶ 21] The Unit asserts the trial court erred in failing to include in its calculations the in-kind income Schultz receives from her current husband. The Unit relies upon *Clutter v. McIntosh*, 484 N.W.2d 846 (N.D.1992), and *Spilovoy v. Spilovoy*, 511 N.W.2d 230 (N.D.1994), in which we held the value of ordinary living expenses provided by a spouse should be included as in-kind income to the obligor's gross income. In *Spilovoy*, 511 N.W.2d at 234, we limited the in-kind income to the value of "food, shelter, utilities, clothing, health care, and transportation" provided by the new spouse. We stressed that the then-current version of the guidelines did "not provide for imputing wages to a noncustodial parent who remarries and chooses not to work outside the home." *Spilovoy*, 511 N.W.2d at 233.

[¶ 22] *Clutter* and *Spilovoy* were decided under the 1991 version of the guidelines, particularly N.D.A.C. § 75–02–04.1–08, which provided:

"The income and financial circumstances of the spouse of an obligor should not be considered as income for child support purposes unless the spouse's income and financial circumstances are, to a significant extent, subject to control by the obligor as, for instance, where the obligor is a principal in a business employing the spouse. The value of in-kind income contributed by the spouse to the obligor must be considered, as where the obligor's spouse meets the cost of providing living quarters or transportation used by the obligor, or otherwise allows the obligor to avoid ordinary living expenses."

The guidelines were amended in 1995, and the second sentence of N.D.A.C. § 75–02–04.1–08, authorizing inclusion of in-kind income from a spouse, was deleted.

[¶ 23] The Unit asserts that, notwithstanding the 1995 amendments, in-kind income from a spouse may still be included in an obligor's income because the guideline definition of "gross income" still includes "cash value of in-kind income received on a regular basis." *See* N.D.A.C. § 75–02–04.1–01(5). The 1995 amendments, however, were intended to exclude from an obligor's gross income in-kind income received from a spouse:

"[I]t is recommended that the reference to 'cash value of in-kind income received on a regular basis' not be removed from the definition of 'gross income.' It is similarly recommended that the definition of 'in-kind income' not be deleted. These recommended changes, however, do not include a restoration of the provisions (formerly found at section 75–02–04.1–08), which called for imputation of income from an obligor's spouse when that spouse meets the cost of providing living quarters or transportation used by the obligor who otherwise allows the obligor to avoid ordinary living expenses. That particular concept concerning receipt of in-kind income from the obligor's spouse is replaced by the process of imputing income based on earning capacity (*see* section 75–02–04.1–07)."

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, p. 4 (November 14, 1994) (prepared by Blaine L. Nordwall). We conclude the trial court did not err in refusing to consider the value of in-kind income Schultz received from her spouse in calculating her child support obligation.

[¶ 24] We reverse and remand for further proceedings consistent with this opinion.

[¶ 25] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.