1997 ND 166

**Larry R. LONGTINE, Plaintiff and Appellant,**

v.

**Diana YEADO, f/k/a Diana Longtine, Defendant and Appellee.**

**Civil No. 970022.**

Supreme Court of North Dakota.

Aug. 11, 1997.

such others by the contractor's failure to take       reasonable precautions against such danger."

R. Scott Stewart (argued), Langdon, for plaintiff and appellant.

Lawrence D. DuBois (argued), Cavalier, for defendant and appellee.

MARING, Justice.

[¶ 1] Larry Longtine appealed from an amended judgment modifying his child support obligation to Diana Yeado. We hold the child support guidelines authorize a trial court to consider one-time occurrences in the form of an obligor's capital gains from the involuntary conversion of a home and profits from an auction sale in setting child support. We affirm.

[¶ 2] Longtine and Yeado were divorced in January 1992. Under a settlement agreement, the divorce decree awarded Longtine the parties' real estate and farm machinery.[1] The decree also awarded Yeado custody of the parties' four minor children and required Longtine to pay child support of $125 per month per child until each child reached the age of 18. The oldest child turned 18 in June 1995, and effective July 1, 1995, the court modified Longtine's child support obligation to $622 per month.

[¶ 3] In May 1996, Yeado moved to modify Longtine's child support obligation, contending that in 1995 he had received more than $60,000 from an auction sale of farm machinery and $70,000 in insurance proceeds from a fire that destroyed the parties' former homestead.

[¶ 4] A referee recommended finding Longtine had received a capital gain of $25,000 from the involuntary conversion of the house and a profit of $24,920 from the auction sale. The referee included those proceeds in Longtine's gross income. After subtracting $8,339 as debt repayment on a depreciable asset from the auction proceeds, the referee analyzed the effect of the proceeds from those one-time events on Longtine's child support obligation:

24. The next step is to determine how these one-time income items affect plaintiff's child support obligation. The guidelines do not specifically set out any procedure for considering income known to be

[a] one-time event. Although the Supreme Court has found that the inclusion of such income is mandated by the guidelines, no procedure is set out. Rather it has been held that the Court "should exercise its discretion and consider awarding the children some portion of these excess ... payments while also ordering a future reduction in support when the effect of the windfall ceases" (*Helbling v. Helbling,* [541 N.W.2d 443 (N.D.1995)]).

25. To include all the income in a single year will result in the greatest increase in child support. This will have the greatest benefit to the children, but also will have the harshest impact upon plaintiff. Despite this, to do so appears to have the most logical result, since all of the income was "earned" in a single year. To make any attempts to spread the income out over two or more years would be arbitrary and will have the result of lessening the harsh impact upon plaintiff at the expense of the children. The only reason to do so would [be] to make payment easier for plaintiff. There has been no showing that there would be any benefit to the children. Plaintiff's child support has been found to be $571.00 per month based upon his regular income as reported in his latest tax return. This figure would be effective as of July 1, 1996. An attempt will then be made to determine an additional amount for a period of 12 months by applying the excess or onetime income to the guidelines in combination with his regular 1995 income. After a period of 12 months, plaintiff's child support would automatically be reduced to the $571.00 or any other modified child support amount.

\*   \*   \*   \*   \*   \*

30. Plaintiff's guideline child support obligation, including the one-time income items, is $1,622.00 per month. (See "Attachment D")

31. Plaintiff's obligation to pay additional support on the one-time income

---

1. The record does not include a N.D.R.O.C. 8.3 property listing describing the value of the prop-

erty in 1992. *See* Appendix E to N.D.R.O.C.

items is $1,622.00—$571.00 = $1,051.00 per month for a period of 12 months for a total of $12,612.00.

The district court affirmed the referee's findings and recommendation. Longtine appealed.

[¶ 5] District court review of a referee's findings of fact is under the clearly erroneous standard. *Steffes v. Steffes*, 1997 ND 49, ¶ 8, 560 N.W.2d 888. A referee's conclusions of law, however, are fully reviewable. *Id.* A decision establishing a child support obligation is a finding of fact which will not be set aside on appeal unless clearly erroneous. *Helbling v. Helbling*, 541 N.W.2d 443, 445 (N.D.1995). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on review of the entire evidence, the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.* A change or modification of child support based upon an erroneous application of the guidelines or statutes is clearly erroneous. *Mahoney v. Mahoney*, 538 N.W.2d 189, 192 (N.D.1995).

[¶ 6] Here, the dispositive issue involves the effect of the insurance and auction proceeds on Longtine's child support obligation. Longtine contends the proceeds he received from the one-time occurrences should not be counted as income for setting his child support obligation. He asserts the capital gain from the house is not income for purposes of his child support obligation because the gain was deferred under federal tax laws when he purchased another home within two years.

[¶ 7] Section 14–09–09.7(3), N.D.C.C., creates a rebuttable presumption the amount of child support resulting from application of the child support guidelines established by the Department of Human Services is the correct amount of child support. *E.g. Edwards v. Edwards*, 1997 ND 94, ¶ 5, 563 N.W.2d 394. Under N.D.A.C. § 75–02–04.1–10, the presumptive amount of child support is a scheduled amount, which is based upon the "obligor's monthly net income and the number of children for whom support is being sought." *See, e.g., Smith v. Smith*, 538 N.W.2d 222, 227 (N.D.1995). The obligor's "net income" is computed by first determining "gross income," which is broadly defined to mean "income from any source, in any form ... [including] capital gains," N.D.A.C. § 75–02–04.1–01(5), and then subtracting the items listed in N.D.A.C. § 75–02–04.1–01(7).[2]

[¶ 8] In *Helbling*, 541 N.W.2d at 447–48, we decided the child support ramifications of an obligor's receipt of moving expenses from his employer in a case where the obligor offered no proof of his actual moving expenses. We considered whether the excess payments should be included in the obligor's income even though the receipt of those payments was a one-time occurrence. We explained the child support guidelines broadly

2. Section 75–02–04.1–01(7), N.D.A.C., says:
"Net income" means total gross monthly income less:
a. Federal income tax obligation based on application of standard deductions and tax tables;
b. State income tax obligation based on application of standard deductions and tax tables;
c. Federal Insurance Contributions Act (FICA) and medicare deductions or obligations;
d. A portion of premium payments, made by the person whose income is being determined, for health insurance policies or health service contracts, intended to afford coverage for the child or children for whom support is being sought, determined by dividing the payment by the total number of persons covered and multiplying the result times the number of such children;

e. Payments made on actual medical expenses of the child or children for whom support is being sought;
f. Union dues where required as a condition of employment;
g. Employee retirement contributions, deducted from the employee's compensation, other than FICA, where required as a condition of employment; and
h. Employee expenses for special equipment or clothing required as a condition of employment or for lodging expenses incurred when engaged in travel required as a condition of employment (limited to thirty dollars per night or actual lodging costs, whichever is less), incurred on a regular basis, but not reimbursed by the employer.

define income to include not only wages and salaries, but nonrecurrent payments such as bonuses, severance pay, and capital gains, and the guidelines do not authorize a deduction from gross income simply because the payments are nonrecurrent. We said our law and public policy inherent in the guidelines dictate that children should share in the obligor's receipt of those nonrecurrent payments. We concluded the trial court properly included the reimbursement payments in the obligor's gross income, but, in calculating his net income, erred in subtracting the excess payments from his gross income:

> On remand, if the district court determines that the past payments are unlikely to recur, it should exercise its discretion and consider awarding the children some portion of those excess relocation payments while also ordering a future reduction in support when the effect of the windfall ceases. The district court, ordinarily, should allow [the obligor's] children to capture some portion of any extra income [the obligor] received.

*Helbling*, 541 N.W.2d at 447.

[¶ 9] *Helbling* was decided under the 1991 version of the child support guidelines. Effective January 1, 1995, the guidelines were amended. As relevant to this issue, however, the definitions of gross income and net income have not changed since the guidelines were adopted in 1991. The guidelines broadly define gross income as income from any source, including capital gains, and allow deductions from gross income only for specific items. Capital gains from the house and the profits from the auction sale constitute "income from any source, in any form, ... [including] capital gains" under the broad definition of gross income. *See Shaver v. Kopp*, 545 N.W.2d 170, 175 (N.D.1996) (employer's contribution to tax-deferred savings plan constitutes gross income). The definition of net income does not authorize a specific deduction from gross income for deferred capital gains or the auction proceeds. *See* fn. 2.

[¶ 10] Moreover, when the guidelines were initially adopted in 1991, several individuals suggested using net income under the federal tax laws to calculate child support:

> Seven commentors expressed a view that the Internal Revenue Service net income should be used to establish child support net income. No change based upon these comments is recommended. The IRS net income reflects policies which have been determined appropriate for taxing purposes. In some cases, usually where the income will be deferred and reported in a later fiscal period, the Internal Revenue Service policies call for waiting for the eventual report of that income. Children cannot wait for support, and obligors should not be allowed the option of deferring income until the child reaches adulthood and no support obligation remains.

December 14, 1990 Summary of Comments Received in Regard to Proposed New NDAC Ch. 75–02–04.1, Child Support Guidelines, p. 4. *See Shaver*, 545 N.W.2d at 175. The guideline drafters specifically declined to define net income by reference to federal tax policies for deferred income, *see Wilhelm v. Wilhelm*, 543 N.W.2d 488, 490 (N.D.1996) (federal tax status is not conclusive for child support purposes), and we decline to rewrite the definition to accomplish that result.

[¶ 11] Section 75–02–04.1–02(8), N.D.A.C., was also adopted in 1995 and says:

> 8. Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

[¶ 12] In our view, however, the 1995 adoption of N.D.A.C. § 75–02–04.1–02(8) does not require a different result than *Helbling* for the treatment of nonrecurrent income. For fluctuating income, N.D.A.C. § 75–02–04.1–02(7) still says "information reflecting and covering a period of time sufficient to reveal the likely extent of fluctua-

tions must be provided." Section 75–02–04.1–02(8) specifically says "[c]alculations made under this chapter are ordinarily based upon recent past circumstances" and "[i]f circumstances that materially affect a child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances." Those subsections simply recognize courts must by necessity rely on past income information when calculating child support amounts because past income is the most reliable predictor of future income. *See Shaver*, 545 N.W.2d at 175; *Helbling*, 541 N.W.2d at 447. Those guidelines authorize a court to consider circumstances that materially affect a child support obligation and are "very likely to change in the near future." *See* November 14, 1994 Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, p. 9.

[¶ 13] Here, the referee's decision was based upon Longtine's 1995 income tax return. *See Hougen v. T.W.*, 1997 ND 101, ¶¶ 5–8, 564 N.W.2d 281 (unnecessary for court to predict income when actual income is known). The referee recognized the "likely future circumstances" that those proceeds were nonrecurring and increased Longtine's child support obligation for one year to provide his children with a benefit from those proceeds. The child support guidelines and *Helbling* authorize treatment of those proceeds in this manner.

[¶ 14] We hold the referee properly applied the guidelines to establish Longtine's child support obligation, and the district court did not clearly err in adopting the referee's findings. *See Steffes*, 1997 ND 49, at ¶ 8, 560 N.W.2d 888.[3]

[¶ 15] We affirm the district court judgment.

[¶ 16] VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

---

[3]. Here, there was no evidence about the basis of the property when the parties were divorced in 1992, *see* fn. 1, and the parties offered no evidence that the basis in the property was anything

SANDSTROM, Justice, dissenting.

[¶ 17] Because the decision of the referee was induced by an erroneous view of the law, I would reverse.

[¶ 18] "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law...." *Heck v. Reed*, 529 N.W.2d 155, 159 (N.D.1995); *Dalin v. Dalin*, 512 N.W.2d 685, 687 (N.D.1994). Here the referee clearly expressed an erroneous view of the law, oblivious to the change in the Child Support Guidelines since those governing *Helbling v. Helbling*, 541 N.W.2d 443 (N.D.1995):

"16. Plaintiff had income of $25,000.00 from the involuntary conversion of the house. *This is a one-time event which is highly unlikely to reoccur.* That does not mean that it is disregarded for child support purposes.

'No matter whether a payment is recurrent or not, the guidelines require that courts consider an obligor's net income "from all sources" when calculating child support (citation and additional text omitted by referee).

'Our law and the public policy inherent in the guidelines dictate that children should share in the child support obligor's good fortune ... if the District Court determines that the past payments are unlikely to recur, it should exercise its discretion and consider awarding the children some portion of those excess ... payments while also ordering a future reduction in support when the effect of the windfall ceases. The District Court, ordinarily, should all [sic] ... children to capture some portion of any extra income ... (an obligor) received.' *Helbling v. Helbling*, 541 N.W.2d 443, 447, (N.D., 1995).

"It is conceded that the destruction of ones [sic] home by fire is not generally considered to be 'good fortune' or a 'benefit.'

---

different than Longtine used in his 1995 tax returns. We therefore do not consider any issue about the amount of the gain attributable to Longtine's income.

Still the fact remains that the result of the situation is that plaintiff ended up with a profit, much the same as if he had sold the house for $70,000.00. Either way plaintiff had a capital gain on the transaction. *There is nothing to indicate that this income should not be considered for child support purposes.* Although it may be of no relevance, it is noted that plaintiff was not living in the house when it burned, therefore this is not, in this case, a situation where plaintiff lost his home and ended up with an increase in his child support. The entire $25,000.00 is included, as none is being taxed."

Findings and Recommendations of Judicial Referee/Notice (emphasis added).

[¶ 19] Contrary to the mistaken view of the referee, the guidelines had changed since *Helbling* to suggest the insurance payments should not be considered as income for child support purposes. Clearly, under the 1991 guidelines, the insurance payments should have been considered. But the post-*Helbling* guidelines have changed. The Child Support Guidelines, amended effective January 1, 1995, explicitly state:

"8. Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. *If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.*"

N.D. Admin. Code § 75–02–04.1–02(8) (emphasis added). The majority notes the definition of "gross income" did not materially change here with the revisions effective in 1995. However, N.D. Admin. Code § 75–02–04.1–02, relating to "determination of support," did change with the addition of several subsections, including subsection 8. The administrative history reflects the agency's explanation:

"This subsection instructs that, while calculations made under this chapter are ordinarily based upon recent past circumstances, if circumstances that materially affect the child support obligation are very likely to change in the near future, *consideration may be given.*"

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, p. 9 (November 14, 1994) (prepared by Blaine L. Nordwall) (emphasis added).

[¶ 20] During oral argument, counsel for Yeado conceded the referee followed *Helbling* and did not consider the changes between the 1991 guidelines, which applied to *Helbling,* and the 1995 guidelines, which apply here.

[¶ 21] At a minimum, the post-*Helbling* guidelines permit the fact finder to consider excluding the insurance proceeds as income for child support purposes. Yet, the referee thought there was nothing to even suggest this was possible. This is particularly significant in this case. In *Helbling,* there was a *windfall.* Here, there was no windfall. Longtine's house burned down. The house had gone to him under the divorce property division. The referee should have considered whether the insurance proceeds should be treated as income for child support purposes. The referee was entitled to do so, but thought she could not.

[¶ 22] The majority affirms because:

"In our view, however, the 1995 adoption of N.D.A.C. § 75–02–04.1–02(8) does not require a different result than *Helbling* for the treatment of nonrecurrent income."

Here is the majority's logic:

Major Premise: If the change in the guidelines does not *require* a different result, the referee's findings were not induced by an erroneous view of the law.

Minor Premise: The change in the guidelines does not *require* a different result.

Conclusion: Therefore, the referee's findings were not induced by an erroneous view of the law.

The majority's logic fails because its major premise is a non sequitur.

[¶ 23] In *State v. Gagnon*, 1997 ND 153, 567 N.W.2d 807, we did not affirm because a correct jury instruction would not *require* a different verdict. We reversed because a correct instruction on the law *may* have resulted in a different verdict.

[¶ 24] In *Heck v. Reed*, Justice Levine, writing the majority opinion, did not say "because the change in the law since *Schestler v. Schestler*, 486 N.W.2d 509 (N.D.1992), does not necessarily *require* a different result than was reached by the trial court, we affirm." Rather, because the trial court's decision had been induced by an erroneous view of the law, she wrote the decision of the trial court was reversed and remanded for the trial court to reconsider its decision in light of the correct law. So, too, should we reverse and remand for a reconsideration of the decision, based on the change in the law since *Helbling*.

[¶ 25] Dale V. Sandstrom

