1997 ND 171

**Clinton HIEB, Plaintiff and Appellant,**

v.

**Tammy HIEB, Defendant,**

and

**State of North Dakota, through the Regional Child Support Enforcement Unit, Appellee.**

**Civil No. 960323.**

Supreme Court of North Dakota.

Sept. 8, 1997.

Sonna M. Anderson (argued), of Anderson & Anderson, Bismarck, for plaintiff and appellant.

Daniel E. Bertsch (argued), Special Assistant Attorney General, Fargo, for appellee.

MARING, Justice.

[¶ 1] Clinton Hieb appeals from the amended judgment entered August 19, 1996, setting child support at $690 per month for his three minor children. We reverse and remand for the district court to determine child support in accordance with our decision.

[¶ 2] Clinton and Tammy Hieb were divorced in 1985. Three children were born of the marriage, all of whom were minors living with Tammy at the time of this action. At the time of the parties' divorce in 1985, Clinton was ordered to pay a total of $300 per month in child support. On September 22, 1992, Clinton's child support obligation was reduced to $189 per month. Tammy assigned her claim to the Regional Child Support Enforcement Unit of Cass County, which filed a motion to increase child support in November of 1995. The motion contended Clinton's monthly net income was over $2,000 per month, and the previously set amount of child support did not comply with the Child Support Guidelines. Clinton resisted this motion, claiming his monthly net income was not as high as stated by the Child Support Enforcement Unit.

[¶ 3] At the time this action was brought, Tammy was receiving public assistance and living in West Fargo with the parties' three minor children, and Clinton was a self-employed long-haul truck driver whose home was in Harvey, North Dakota. A hearing was held on June 13, 1996, during which the court heard testimony from Clinton and his daughter Leslie. The court received Clinton's 1993, 1994, and 1995 tax returns into evidence, and made a determination of Clinton's net income for child support by calculating Clinton's average monthly income over that three year period. This determination was made by including the amounts Clinton deducted and claimed as business meal expenses on the basis that those expenses were "personal and living expenses" which were already accounted for by the Guidelines. The court found Clinton's net income to be $2,000 for purposes of child support and set Clinton's support amount at $690 per month, the amount prescribed by the Guidelines.

[¶ 4] Clinton appealed the trial court's amended judgment, claiming the trial court erred in its computation of his net income for purposes of child support. Clinton argues the lower court should not have included his meal expenses in determining his net income.

[¶ 5] Clinton claims the Internal Revenue Service regulations currently permit him to deduct a specified percentage of his meal expenses as a business expense for income tax purposes. Clinton's 1993 tax return shows he deducted 100% of his meal costs as a business expense in 1993, and his 1994 and 1995 returns show he deducted 50% of his meal costs in each of those years. Clinton argues he should be able to deduct 100% of his meal expenses in 1994 and 1995 as well as 1993 for purposes of computing his net income. We do not agree.

[¶ 6] Child support determinations are findings of fact, and are governed by the "clearly erroneous" standard of review. *Wolf v. Wolf*, 557 N.W.2d 742, 744 (N.D. 1996). A finding is "clearly erroneous" if this court finds, after a review of the entire record, it was induced by an erroneous view of the law, or if this court is left with a definite and firm conviction that a mistake has been made. *Id.*

■ [¶ 7] Child support determinations are governed by N.D.A.C. Chapter 75–02–04.1. A correct finding of an obligor's net income is essential to determining the proper amount of child support. *Shaver v. Kopp,* 545 N.W.2d 170, 174 (N.D.1996). To determine the proper amount of support owed, the court must first determine the obligor's net income from all sources and the number of children to be supported. N.D.A.C. §§ 75–02–04.1–02(3) and 75–02–04.1–10. After the obligor's net income is established, that amount is applied to the Guidelines to determine the proper amount of child support. The amount prescribed by the Guidelines enjoys a rebuttable presumption of correctness. *Edwards v. Edwards,* 1997 ND 94, ¶ 5, 563 N.W.2d 394.

■ [¶ 8] Determining net income from self-employment is specifically covered by the Guidelines. *See* N.D.A.C. §§ 75–02–04.1–01(8) and 75–02–04.1–05. Under the Guidelines, before net income from self-employment can be computed, the trial court must first compute the obligor's adjusted gross income. *See* N.D.A.C. § 75–02–04.1–05(1). Only after the correct amount of adjusted gross income is determined can the trial court compute net income. *See* N.D.A.C. § 75–02–04.1–05(2).

■ [¶ 9] N.D.A.C. § 75–02–04.1–05(1) reads in part: "Deducting expenses from the gross income of the business determines the adjusted gross income, according to internal revenue service terminology." This section of the Guidelines allows the deduction of "business expenses" as defined by Internal Revenue Service terminology in computing a self-employed obligor's adjusted gross income.

[¶ 10] The standard for allowing a taxpayer to deduct money spent for meals or lodging as a business expense is found at 26 U.S.C.A. § 162(a)(2):

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) ...

(2) traveling expenses (including amounts expended for meals ... ) while away from home in the pursuit of a trade or business; and

(3) ...

This section was first interpreted by the U.S. Supreme Court in *Commissioner of Internal Revenue v. Flowers,* 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). The Court held in order for the deduction to be allowed: (1) the expense must be ordinary and reasonable, (2) it must be incurred while away from home, and (3) the expense must be incurred in pursuit of a trade or business. *Id.* "[T]here must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer." *Flowers,* 326 U.S. at 470, 66 S.Ct. at 252. "Failure to satisfy any one of the three conditions destroys the traveling expense deduction." *Flowers,* 326 U.S. at 472, 66 S.Ct. at 253. Because of the record-keeping requirements, the burden of proving the deduction is on the taxpayer.

[¶ 11] Section 274(d) of the Internal Revenue Code provides, in part, no deduction for any travel expense, including meals while away from home shall be allowed "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayers own statement" the amount of the expense, the time, the place, and the business purpose. 26 U.S.C.A. § 274(d). This section, however, further provides that the Secretary has authority to prescribe regulations relating to per diem allowances to which some or all the substantiation requirements shall not apply. *Id.*

[¶ 12] Current tax regulations grant authority to the Commissioner to establish rules under which a taxpayer may elect to use a per diem or specified amount for meals while traveling in lieu of substantiating the actual cost of meals. 26 C.F.R. § 1.274–5T(j). Although the taxpayer is relieved of establishing the actual cost of meals, he still must establish the time, place, and business purpose of the travel. *Id.; see also* 26 C.F.R. § 1.274–5T(b)(2). The use of the standard per diem meal allowance is optional and the taxpayer can elect to deduct actual meal expenses by maintaining records to

substantiate the expenses in accordance with the Internal Revenue Code, 26 U.S.C.A. § 274(d).

[¶ 13] From 1986 to 1993, section 274(n) of the Internal Revenue Code limited the deduction to 80% of meal expenses. 26 U.S.C.A. § 274(n)(1988). When section 274(n) was originally adopted by Congress in 1986, the reason given for the limit on the deduction was that meal expenses inherently involve an element of personal living expenses. *See* Report of the Senate Finance Committee, S.Rep. No. 99–313, at 68 (1986). Since 1993 changes in the law, a taxpayer can deduct only 50% of meal expenses incurred while away on business travel from gross income. 26 U.S.C.A. § 274(n) (1993).

[¶ 14] Clinton testified the I.R.S. regulations permit a standard per diem meal deduction of $30 each day he is on the road. *See* Rev. Proc. 90–38, 1990–2 C.B. 363. Clinton testified he actually spent $30 per day on meals while on the road in pursuit of his trucking business and the $30 per diem deduction is allowed even with no receipts or record of the meal expenditures. He offered no documentation to the court other than copies of his income tax returns for 1993, 1994, and 1995. He testified he is required to maintain trucking logbooks and that his 1995 logbook showed he was on the road for 306 days that year. He also testified he was close to the same number of days for 1993 and 1994.

[¶ 15] Clinton argues his logbooks are sufficient to substantiate his meal deduction for I.R.S. purposes, and therefore, they should be sufficient to substantiate his meal deduction for determination of net income from self-employment under the Guidelines. We agree in part.

[¶ 16] The Guideline applicable to determining net income from self-employment specifically directs the deduction of business expenses from the gross income of the business in accordance with I.R.S. terminology. N.D.A.C. § 75–02–04.1–05(1). Although this court has held that income determinations for taxation purposes are not conclusive for

determination of income for child support purposes, *see Longtine v. Yeado,* 1997 ND 166, ¶ 10, 567 N.W.2d 819; *Shaver v. Kopp,* 545 N.W.2d 170 (N.D.1996); *Wilhelm v. Wilhelm,* 543 N.W.2d 488 (N.D.1996), this case deals with a Guideline, which directs reference to I.R.S. terminology. This case is thus distinguished and we do not hereby abandon our position that the Guideline drafters specifically rejected a blanket following of I.R.S. definitions. December 14, 1990, Summary of Comments Received in Regard to Proposed New N.D.A.C. ch. 75–02–04.1, Child Support Guidelines, p. 4., *see Longtine v. Yeado,* 1997 ND 166, ¶ 10, 567 N.W.2d 819.

■ [¶ 17] Clinton's income tax returns for 1993, 1994, and 1995 reflect he deducted 100% of his meal expenses in 1993 and 50% of his meal expenses in 1994 and 1995 in order to arrive at his adjusted gross income for tax purposes. These tax returns were received into evidence without objection.[1] In fact they were offered in evidence by the State of North Dakota. We conclude, they establish the business expenses which Clinton can properly deduct under N.D.A.C. § 75–02–04.1–05(1) and Internal Revenue Service terminology to arrive at adjusted gross income for determination of child support.

■ [¶ 18] After the self-employed obligor's adjusted gross income is determined, the trial court must calculate the obligor's net income. N.D.A.C. § 75–02–04.1–05(2) reads as follows:

> After adjusted gross income from self-employment is determined, all business expenses allowed for taxation purposes, but which do not require actual expenditures, such as depreciation, *must* be added to determine net income from self-employment. Business costs actually incurred and paid, but not expensed for internal revenue service purposes … *may* be deducted to determine net income from self-employment. [Emphasis ours.]

Clinton claims the 50% of his meal expense which he was not allowed to deduct on his

---

1. We note the 1993 return received as Defendant's Exhibit 1 is not signed by the taxpayer or a preparer and further Schedule C, Part II, 24c,

Form 1040 appears to allow an 80% deduction of meal expenses not the 100% deduction claimed by Clinton.

1994 and 1995 tax returns should be deducted under this section because he actually incurred $30 per day for his meals while on the road. The word "may" creates a nonmandatory duty, and we will only construe it as "must" where the context or subject matter compels that construction. *Stout v. Stout,* 1997 ND 61, ¶ 12, 560 N.W.2d 903. The North Dakota Legislative Drafting Manual dictates that the word "must" is used in a statute to create a duty; the word "may" confers a privilege. *See* North Dakota Legislative Drafting Manual, page 105, 1997 Edition. We find nothing in this section or its history to indicate that the Department of Human Services intended the word "may" to be given an interpretation other than permissive, especially in light of the word "must" in the preceding sentence.

[¶ 19] Under this Guideline, Clinton must first prove his meal expenses were "[b]usiness costs actually incurred and paid." N.D.A.C. § 75–02–04.1–05(2). Clinton testified he actually spent $30 per day for meals, but he never corroborated his testimony with any documentation. Not only did he fail to offer into evidence, receipts or any other record of his meal expenditures, he failed to even offer his logbooks to establish time, place, and business purpose of travel.

[¶ 20] The trial court considered Clinton's meal deductions as subsistence expenses and allowed no deduction for any of them. The court relied on the fact that the Child Support Guidelines take into consideration the obligor's personal subsistence and daily living expenses, and no reduction in income is to be made for those expenses. *See* N.D.A.C. § 75–02–04.1–09(1)(a).[2] We do not agree with the trial court that 100% of Clinton's meal expenses are personal subsistence expenses. We are persuaded, however, that the remaining 50% of the per diem meal allowance not allowed as a deduction on his tax return is personal living expenses in light of the reason given in the Congressional Report for limiting the deduction.

**2.** N.D.A.C. § 75–02–04.1–09(1)(a) reads in pertinent part:

 1. The child support amount provided for under this chapter ... is presumed to be the

[¶ 21] We conclude, because of the lack of any documentation of actual expenditure, N.D.A.C. § 75–02–04.1–09(1)(a) and the Congressional history of section 274(n) of the Internal Revenue Code, Clinton is not entitled to deduct the remaining 50% of the per diem meal allowance not deducted on his tax returns for 1994 and 1995 in computing his net income under N.D.A.C. § 75–02–04.1–05(2).

[¶ 22] The trial court erred in its calculation of Clinton's net income. The amended judgment of the district court is reversed and the case is remanded to the district court to determine child support in accordance with our decision.

[¶ 23] VANDE WALLE, C.J., and MESCHKE, NEUMANN and SANDSTROM, JJ., concur.

correct amount of child support. No rebuttal of the guidelines may be based upon ... a. The subsistence needs, work expenses, and daily living expenses of the obligor. . . .