2004 ND 120
T.E.J., Plaintiff and Appellant
v.
T.S. and L.R.S.-J., a minor child, by and through her guardian, T.S., Defendants and Appellees.
No. 20030337
Supreme Court of North Dakota.
Decided June 16, 2004
Arnold V. Fleck, Fleck Law Office, P.O. Box 6178, Bismarck, N.D. 58506-6178, for plaintiff and appellant.
Cynthia Wagner Goulet, Kelsch, Kelsch, Ruff & Kranda, P.O. Box 1266, Mandan, N.D. 58554-7266, for defendants and appellees.
Opinion of the Court by Kapsner, Justice.
Kapsner, Justice.
[¶ 1] T.E.J. ("Ted")[1] appealed from a second amended judgment declaring him the biological father of L.R.S.-J. ("Lisa"), setting his child support obligation, and awarding visitation. We hold the trial court did not err in determining Ted's child support obligation or in setting the visitation schedule, and we affirm.

I
[¶ 2] Ted and the child's mother, T.S. ("Tina"), were never married but lived together for about nine years prior to Lisa's birth on October 4, 1997, in the state of Washington. Tina moved with Lisa to Mandan, North Dakota in August 1999. After helping Tina and Lisa settle in Mandan, Ted returned to Washington. Prior to March 1999, Ted worked at various jobs across the country as an engineering design consultant. However, after Lisa's birth, Ted decided he did not want to continue to work the long hours required by his consulting jobs. He then started a business providing temporary employees to other businesses and also began operating a cherry orchard. Neither business has been profitable.
[¶ 3] Ted brought this paternity action on May 24, 2002. After a hearing, the trial court declared Ted to be Lisa's biological father, set past and future child support, and awarded visitation.

II

A
[¶ 4] On appeal, Ted asserts the trial court erred in setting his child support arrears and his future support payments. Child support determinations involve questions of law subject to the de novo standard of review, findings of fact subject to the clearly erroneous standard of review, and may involve matters of discretion subject to an abuse of discretion standard of review. Lauer v. Lauer, 2000 ND 82, ¶ 3, 609 N.W.2d 450. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines established by the Department of Human Services. Id. Section 14-09-09.7(3), N.D.C.C., creates a rebuttable presumption the amount of child support resulting from application of the guidelines is the correct amount of child support. Longtine v. Yeado, 1997 ND 166, ¶ 7, 567 N.W.2d 819. The presumptive amount of child support is the scheduled amount, which is based upon the obligor's monthly net income and the number of children for whom support is being sought. Id.
[¶ 5] Using Ted's tax returns, and making certain deductions and adjustments required or allowed by the guidelines, the court separately determined Ted's support arrears for the years 1999, 2000, and 2001. See N.D. Admin. Code § 75-02-04.1-01(7). The court also determined Ted's future support obligation by imputing income to Ted under N.D. Admin. Code. § 75-02-04.1-07(9), because the court found Ted had voluntarily changed his employment, resulting in a reduced income which was not reflective of his earning capability.
[¶ 6] Relevant to determining Ted's support obligation, the trial court made the following findings:
[Ted] made a voluntary change in his employment in 1999 which resulted in reduction of his income. He was formerly employed in a technical field, as an electrical engineer, for about 15 years. That occupation required [Ted] to periodically re-locate within the country, and to work long hours. In 1999, [Ted] chose to discontinue the pattern of taking positions as an electrical engineer which required periodic relocation, and to instead become involved in businesses which are not successful or which have failed, but which have required significant investments of his time and financial resources.
Ted concedes he and Tina jointly agreed after Lisa's birth that Ted should not continue to work the long hours his electrical engineering design job required. Although Ted now argues he has not been able to find electrical engineering jobs, the record supports the trial court's finding that Ted's decision to stop working in electrical design and to instead take up self-employment was voluntary. We conclude the court's finding that Ted voluntarily changed his employment is supported by the record and is not clearly erroneous.

B
[¶ 7] Ted asserts the court erred in computing his child support arrears, because the court did not take into account the substantial losses Ted has incurred in his self-employed businesses, and, in particular, his cherry orchard. Under the guidelines, income includes "net income from self-employment." N.D. Admin. Code § 75-02-04.1-01(5)(b). The guidelines define "net income from self-employment" to mean "total income, for internal revenue service purposes," with certain reductions. N.D. Admin. Code § 75-02-04.1-05(1). Torgerson v. Torgerson, 2003 ND 150, ¶ 15, 669 N.W.2d 98. However, under the guidelines, an obligor's ability to pay child support is not determined solely upon actual income, but also takes into account the obligor's earning capacity. Logan v. Bush, 2000 ND 203, ¶ 9, 621 N.W.2d 314.
[¶ 8] Generally, it is appropriate to establish child support arrears by using the obligor's actual past annual income. In Interest of E.H., 1997 ND 101, ¶ 7, 564 N.W.2d 281. However, when there is a voluntary change in employment the guidelines specifically authorize the court, in its discretion, to impute income to the obligor. N.D. Admin. Code § 75-02-04.1-07(9); Logan, 2000 ND 203, ¶ 14, 621 N.W.2d 314. The court regarded Ted's self-employed losses to be the result of Ted's voluntary change of employment and not reflective of Ted's earning capability. Courts do not operate in a vacuum in determining child support and must apply the guidelines using common sense in consideration of the circumstances. Minar v. Minar, 2001 ND 74, ¶ 20, 625 N.W.2d 518. Considering the circumstances here, and using a common sense approach, the court computed Ted's past child support obligation for the years 1999, 2000, and 2001 based upon Ted's actual income from all sources, but without deducting the self-employment losses, because those losses did not accurately reflect Ted's earning capability. We conclude it was not an abuse of discretion for the court to refuse to deduct those losses from Ted's other income in determining Ted's child support arrears.
[¶ 9] The court determined that Ted had a support obligation of $830 per month for October through December 1999, for a total arrearage of $2,490, that he had a support obligation of $588 per month in the year 2000, for a total arrearage of $7,056, and that he had a support obligation of $427 per month for the year 2001, with a total arrearage of $5,124. We conclude the trial court's determination of support for 1999, 2000, and 2001 is in accordance with the guidelines and is not clearly erroneous.

C
[¶ 10] Ted also asserts the trial court erred in using the standard deduction, exemptions, and tax tables for 2002 to determine Ted's net income for the years 1999, 2000, and 2001, rather than using the standard deduction, exemptions, and tax tables for each of those years. Tina concedes the court used the 2002 tax tables but she argues this had a negligible impact on the court's calculations. She asserts Ted offered to provide the court with the appropriate forms and numbers but did not do so.
[¶ 11] A court can judicially notice tax rates and tax tables. See Berg v. Ullman, 1998 ND 74, ¶ 23, 576 N.W.2d 218. However, absent any showing by Ted that the court's use of the 2002 rates and tables for the years in question had an actual impact on the child support calculation, we conclude this is a de minimis error that does not justify reversal. See Halvorson v. Halvorson, 482 N.W.2d 869, 872 (N.D. 1992).

D
[¶ 12] Ted asserts the trial court erred in determining his future support obligation by imputing income to Ted. Under N.D. Admin. Code § 75-02-04.1-07(9), the court may impute income to determine an obligor's future support obligation when there is a voluntary change in employment:
Notwithstanding subsections 4, 5, and 6, if an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.
This provision authorizes the trial court to impute prior income of the obligor for the specified period if the obligor voluntarily leaves his job for a lower paying job. Harger v. Harger, 2002 ND 76, ¶ 12, 644 N.W.2d 182. The trial court specifically found that Ted voluntarily changed his employment in 1999 from engineering design work to operating his unprofitable self-employed businesses.
[¶ 13] Ted concedes that by 2005 he should realize profits of $40,000 or more from his self-employed business. Section 75-02-04.1-02(8), N.D. Admin. Code, provides:
Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.
(Emphasis added).
[¶ 14] We conclude it was appropriate for the trial court to consider that Ted's self-employment would become profitable in the near future. The court found that Ted's 2002 reported income of $16,859 was not an accurate indicator of Ted's earning capability. Consequently, the court utilized Ted's 2001 income of $31,275 to compute Ted's support obligation for 2002 and beyond. The guidelines unambiguously allow the court to impute, within the court's discretion, "income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding." The court found that Ted's 2001 income, which was incurred within the 36-month time frame prior to commencement of the proceeding, most accurately reflected Ted's earning capability. The court, therefore, imputed income to Ted for that 12-month period as allowed by the guidelines to determine the support obligation going forward. Rather than impute Ted's highest twelve consecutive months income during the relevant period, the court imputed the twelve consecutive months income which, in the court's opinion, most closely reflected Ted's future earning capability. We conclude the trial court did not, under the circumstances, abuse its discretion in applying N.D. Admin. Code § 75-02-04.1-07(9) and did not err in computing Ted's support obligation to be $427 per month for the year 2002 and beyond.

E
[¶ 15] Ted asserts the court also erred in determining the support amount, because the court should have imputed only Ted's "earnings" or "wages" and should not have considered other income received by Ted during 2001. We are not persuaded the court erred in making its computation. The court found that Ted's total realized income for 2001 most accurately reflected his earning capacity going forward for purposes of determining his support obligation. His 2001 income, which the court utilized to determine Ted's capability to pay future support, was $31,275. That income included $17,600 of wages or earnings, $6,866 of interest and dividend income, $943 of rent income, and $5,866 of unemployment benefits. Under the guidelines, net income is computed by first determining gross income, which is broadly defined to mean "income from any source, in any form." N.D. Admin. Code § 75-02-04.1-01(5)(a). To determine the proper amount of support the court must determine net income "from all sources." Hieb v. Hieb, 1997 ND 171, ¶ 7, 568 N.W.2d 598. We are not convinced the trial court erred in considering Ted's 2001 income of $31,275 from all sources, to compute Ted's support obligation for 2002 and beyond. The court expressly found that in using this income figure to set the support obligation the court was "balancing [Ted's] declining opportunities in his technical field and his apparent ability." We find no error in the court's determination.

F
[¶ 16] Ted also argues that the trial court erred in not giving him credit toward his support obligation for jet skies he gave Tina to sell and for $2,500 he gave her to invest. Ted claims both items were supposed to be used toward child support, but Tina asserts those items were not given to her in partial satisfaction of Ted's support obligation. The trial court implicitly found those items were not given by Ted to Tina as child support. That finding is not clearly erroneous, and we conclude the court did not err in refusing to credit those items against Ted's support obligation.

III
[¶ 17] Ted asserts the visitation set by the trial court is erroneous. The court awarded Ted a minimum of 40 days visitation with Lisa during the summer months of July and August. The court also awarded Ted up to seven consecutive days of visitation with Lisa in the fall and spring of each school year, but the court restricted those visitations to "the city where [Lisa] resides or at the place of [Ted's] residence." The court also scheduled visitation during Christmas break to be equally divided between the parties. In addition, the court awarded Ted weekend visitations with Lisa from 8:00 p.m. Friday until 8:00 p.m. Sunday, once each month in the city of Lisa's residence. Ted asserts the court erred, because the visitation award is too limited and too restrictive.
[¶ 18] The trial court's award of visitation is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. K.L.G. v. S.L.N., 2001 ND 33, ¶ 9, 622 N.W.2d 232. When there is a long distance between the homes of the custodial and non-custodial parents, the court may provide less frequent, but extended, visitation periods to preserve the non-custodial parent's ability to foster and develop a relationship with the child. Id. at ¶ 12. Under N.D.C.C. § 14-05-22(2), a court must grant such rights of visitation as will enable the non-custodial parent and child to maintain a parent-child relationship, and the court may restrict or deny this right only if visitation is likely to endanger the child's physical or emotional health. See also Ackerman v. Ackerman, 1999 ND 135, ¶ 13, 596 N.W.2d 332.
[¶ 19] In awarding visitation, the court stated that Ted "is a fit and proper person to have reasonable visitation rights with the parties' child, which rights take into consideration the distance which the parties currently live apart; the age of the child; the school and school vacation schedules of the child; and the current work schedules of the parents." The court did not, however, clearly indicate its rationale for restricting the location of the seven-day visitations in the spring and fall of each year. Consequently, under N.D.R.App.P. 35(a)(3), this Court temporarily remanded the case with instructions the trial court provide its rationale for the restriction. Upon remand, the trial court provided written explanation:
[Ted] and [Tina] do not communicate well with each other. It is difficult for them to agree on anything, and to the extent possible, I believed it would be in the best interest of the child to be very specific about visitation and how it should occur. [Ted] claims to have very limited resources, and so visits at the place of residence of one of the parties seemed to be the most reasonable way to have visitation accomplished.
[Ted] has demonstrated some poor judgment in planning for the child's needs and age-appropriate visitation plans.
We acknowledge the trial court's location restriction on the spring and fall visitations is an appropriate attempt by the trial court to facilitate visitations in a situation where Ted and Tina have poor communication and are not working to harmonize visitations in Lisa's best interest. We conclude the trial court's award of visitation in this case serves to preserve Ted's capacity to foster and develop a relationship with Lisa and is not clearly erroneous.

IV
[¶ 20] Tina requests an award of attorney fees on appeal. In paternity actions a court, in its discretion, may award attorney fees if the parties have an agreement about the attorney fees or if a party has a frivolous claim. N.D.C.C. §§ 14-17-15 and 28-26-01; Lukenbill v. Fettig, 2001 ND 47, ¶ 15, 623 N.W.2d 7. Tina does not claim the parties have reached an agreement about attorney fees in this case and there is no assertion that Ted's claims are frivolous. Consequently, the request for attorney fees on appeal is denied.

V
[¶ 21] We conclude the trial court's award of child support is in accordance with the law and its award of visitation is not clearly erroneous. We, therefore, affirm the judgment, and costs are awarded to the appellees.
[¶ 22] Carol Ronning Kapsner
Mary Muehlen Maring
William A. Neumann
Lawrence A. Leclerc, D.J.
Gerald W. VandeWalle, C.J.
[¶ 23] The Honorable Lawrence A. Leclerc, D.J., sitting in place of Sandstrom, J., disqualified.
NOTES
[1] The names of the parties are pseudonyms.